ROBERT HUDGINS, JOHN L. HUDGINS, ELLIOTT W. HUDGINS, AND REBECCA P. HUDGINS, EXECUTRIX OF ALBERT G. HUDGINS, DECEASED, APPELLANTS, *v.* WYNDHAM KEMP, ASSIGNEE IN BANKRUPTCY OF JOHN L. HUDGINS.

Deeds of large tracts of land made by a grantor when deeply in debt, and when suits were pending against him, and who shortly afterwards petitioned for the benefit of the bankrupt act, the possession and occupation of the land continuing the same after the sale as before, and the consideration money one-half only of the actual value, held to be fraudulent and void as against creditors.

Exceptions to the master's report respecting rents and profits not having been taken in the court below, they cannot be sustained in this court.

THIS was an appeal from a decree of the Circuit Court of the United States for the eastern district of Virginia. The bill was originally filed in the Circuit Court by Edmund Christian, general assignee in bankruptcy in said district, on the 19th of May, 1845; and upon his death, Wyndham Kemp was appointed assignee, on the 12th of May, 1852, by the District Court. After that, Kemp prosecuted the suit.

On or about the 17th of February, 1843, John L. Hudgins filed his petition in the District Court of the United States for the eastern district of Virginia, praying that he might have the benefit of the act of Congress of August 19, 1841, to establish a uniform system of bankruptcy throughout the United States, and that he might be deemed and declared a bankrupt under said law; and the usual proceedings having been taken upon said petition, the said John L. Hudgins was, on the 20th May, 1843, duly adjudged and declared to be a bankrupt; and Edmund Christian, the general assignee in bankruptcy in said district, was thereupon duly appointed, by said court, the assignee in bankruptcy of said John L. Hudgins.

Other proceedings were had in the District Court, which it is not material here to mention.

On the 17th of May, 1845, the following points and questions were adjourned to the Circuit Court for decision:

1. Is the allegation of the objectors to the discharge of the bankrupt, that the deed executed by said John L. Hudgins, bearing date the 1st day of March, 1842, to Elliott W. Hudgins, conveying all the rest of his land in York, not conveyed by a previous deed of 6th September, 1839, is a fraudulent deed within the meaning of the bankrupt law, sustained by the evidence in this cause?

2. Is the allegation of the objectors, that the deed executed by said John L. Hudgins to Houlder Hudgins, dated 19th July, 1842, stating a consideration of $4,000, is a fraudulent deed within the meaning of the bankrupt law, sustained by the proofs?

3. Is the deed of the 21st February, 1842, in which John L. Hudgins conveys to Robert Hudgins, for an alleged consideration of $5,000, his tract of land in Matthews county, proved to be a fraudulent deed within the meaning of the bankrupt law?

4. Are the allegations of the objectors, that the petitioner concealed himself and his effects, so as to prevent the execution of process, and the deeds aforesaid were made for the purpose of *eloigning* and removing his property so as to defraud his creditors, shown to be true?

5. Whether it is proved that the said John L. Hudgins has not made a true and faithful schedule of all his estate and property, nor a full and true statement of all the debts due him?

6. Finally, whether the petitioner, on any or all of the above grounds, ought to be refused a discharge from his debts?

On the 19th of May, two days after the above questions had been adjourned to the Circuit Court, the assignee filed his bill in that court, alleging that the conveyances above mentioned were fraudulent and void, and praying that they might be set aside. The proceedings which took place thereupon are set forth in the opinion of the court.

On the 27th of June, 1855, the Circuit Court passed its final decree, confirming the report of the master, and ordering the property in question to be sold by the assignee. From this decree the defendants appealed to this court.

The case was argued by *Mr. Lyons* and *Mr. Johnson* for the appellant, and by *Mr. Robinson* and *Mr. Patton* for the appellees.

This being a case where much of the arguments was employed in the examination and comparison of evidence, only the points raised upon each side can be mentioned.

For the appellants:

I. There is no proof of any fraud upon the part of Robert Hudgins, but, on the contrary, the proof is clear and unquestioned, that he paid the cash price which his deed calls for, to John L. Hudgins, which, with the charges upon the property, amounted to its full value. Neither is there any proof of fraud in this transaction by John L. Hudgins.

II. There is an abortive attempt at such proof. But if it were shown by the clearest proof that John L. Hudgins had acted with the most covinous and fraudulent design in making his conveyance, that design would not affect Robert Hudgins, unless it was shown that Robert Hudgins participated in it, or, at the least, had knowledge of it. A purchaser of property

for valuable consideration can never be affected, and have his title destroyed, because the vendor sold from a base motive— the motive to defraud his creditors—at least, unless he have knowledge of the motive.

III. Because a sale of property for valuable consideration, even by an insolvent, is not in fact or law a fraud upon any creditor who is merely a creditor at large, the fraud, if any be committed, consisting in the concealment or misapplication of the money arising from the sale; and no purpose was manifested or even entertained to defraud any judgment creditor, because the deed upon its face conveyed the property subject to the rights of the judgment creditor.

IV. Whether the deed was void as to creditors or not, it was good between the parties to it, and no decree should have been rendered, vacating the deed, and directing a sale of the property, until an account had been taken of the debts, for the purpose of ascertaining whether there were any unpaid and recoverable; and if, upon the report of such account, it appeared that there were such debts, the defendant, Robert Hudgins, had a right to redeem his land by paying them, or so much of the land might then have been sold as would satisfy them. It was error to sell the whole land, without first ascertaining that there were debts sufficient to absorb it, and without allowing the defendant the privilege of redeeming it.

V. Because the judgment creditors had no right to do more than extend the lands, unless it was shown, as it was not, that the profits would not in a reasonable time extinguish the debts. But they had no right, because by proof of their debts before the commissioner the lien of the judgment was extinguished.

VI. It was error to charge Robert Hudgins with rents and profits prior to the filing of the bill against him. Up to that time, he held and claimed the property as his own, as a purchaser for valuable consideration; and the utmost that the plaintiff could claim of him, would be the right of a judgment creditor, and his right to rents and profits is never extended retroactively beyond the filing of the bill; and in this case the error and injustice of the rule which has been applied to the defendant is most remarkable and obvious. The plaintiff charges that the conveyance to the defendant was fraudulent, and therefore he claims the right to recover of him the rent of the property in one case, and the profits in another, upon the ground that he has actually enjoyed the property in the one case, and received the profits in the other; and yet the plaintiff has taken testimony that the defendant did not occupy the property for which rent is charged, but John L. Hudgins did;

and that is ielied upon as evidence of the fraud. Now, it cannot be true that he did not occupy it, and therefore merely pretended to purchase it, and therefore has been guilty of a fraud, and yet he did occupy it, and therefore is not guilty of a fraud, yet the decree practically affirms both.

And in respect to the profits. The defendant is charged with profits which there is no proof that he received.

VII. The plaintiff is seeking to recover debts, if he has any right at all, which were due primarily by Thomas Hudgins, for which John L. Hudgins was security. Thomas Hudgins, by his deed of the —— day of ——, conveyed a large amount of property to trustees, for the benefit of those creditors, giving them priority over the other creditors who are also secured by the said conveyance. The creditors accepted the conveyance, and took under it. The court should have required them to account for the property conveyed by that deed, before it authorized them to take the property of John L. Hudgins, if the property in question was his, and still more, before it authorized them to take the property from another, who claimed it as purchaser for valuable consideration, and certainly held it by a title valid against John L. Hudgins.

The property thus conveyed may have been sufficient to satisfy all the debts, and they may have been paid; the answers express the belief that they have been; an account of the trust fund could only determine the point. By accepting the deed, and taking under it, the creditors assumed the responsibility of fairly accounting for the property conveyed; they cannot use, or hold subject to their use, the property of Thomas Hudgins, and yet claim that of John L. Hudgins, or his vendor, for the same debts.

VIII. The decree, which is final, takes no notice of the rights of Robert Hudgins, as against John L. Hudgins, and makes no provision for the restitution to him of the surplus which might remain of the proceeds of the sales of the property after satisfying the debts, although there may be such surplus; and if there shall be, Robert Hudgins is certainly entitled to it, because his title, if not good against the creditors of John L. Hudgins, is good against every one else.

IX. The court did not pass upon the exceptions to the depositions, and therefore admitted the testimony excepted to.

The following authorities were relied upon in the argument: Shirley *v.* Lorg, 6 Rand., 736; Davis *v.* Turner, 4 Gratt., 422; Blow *v.* Maynard, 2 Leigh, 29; Fones *v.* Rice, 9 Gratt., 568; Ex parte Christy, 3 How., 292; Pettiplace *v.* Sales, 4 Mason C. C. R., 312; Hapkerk *v.* Randolph, 2 Brack. R., 132; Randall *v.* Philip, 3 Mason C. C. R., 378; Gregg *v.* Sayre,

8 Pet., 244; Clough *v.* Thompson, 7 Gratt., 26; 1 Story Eq., p. 364; 1 Story Eq., 588; Dorr *v.* Shaw, 4 John. Ch. R., 17; Smith *v.* Burton, 13 Pet., 464.

For the appellee:

1. The decree is right, and ought to be affirmed. The deed from Robert Hudgins to John L. Hudgins was contrived of fraud, with intent to defraud the creditors of the said John L. Hudgins of their lawful debts, and was therefore properly set aside *in toto*, under the Virginia act in 1 R. C., 1819, p. 372, c. 101, § 2; Chamberlayne, &c., *v.* Temple, 2 Rand., 395; Garland *v.* Rives, 4 ib., 282; Shirley *v.* Long, 6 ib., 735, and other cases cited in 1 Rob. Pract., old ed., 512, 554; and under the bankrupt act of 1841. Sands, &c., *v.* Codwise, &c., 4 Johns., 559, also 582 to 600; Codwise *v.* Gelston, 10 ib., 517; Arnold, &c., *v.* Maynard, 2 Story, 352; Hutchins *v.* Taylor, &c., 5 Law Reporter, 289; Cornwell's appeal, 7 W. and S., 311; McAllister *v.* Richards, 6 Barr, 133. For the assignee is not only vested by the law with all the rights of the bankrupt, but with the rights of creditors also. He may set aside a fraudulent conveyance of the bankrupt, which the bankrupt himself could not do. McLean *v.* Lafayette Bank, 3 McLean, 189, 587; McLean *v.* Malane, &c., ib., 199; McLean *v.* Johnson, &c., ib., 202; Everett *v.* Stone, 3 Story, 456; Peckham *v.* Burows, ib., 544; Freeman *v.* Deming, 3 Sandford's Ch. R., 332; Shauhan, &c., *v.* Wherritt, 7 How., 627; Buckingham, &c., *v.* McLean, 13 ib., 170.

2. There is no error as to the rents and profits. An account of rents and profits was decreed from the time of the act of bankruptcy, in Sands, &c., *v.* Codwise, &c., 4 Johns., 589, 600. On the same principle, it was proper here to decree rents and profits from the filing of the petition; for "the act of bankruptcy in England is tantamount to a filing of the petition under our statutes." McLean *v.* Malane, &c., 3 McLean, 200. The pendency of the petition is constructive notice thereof to the grantee in the deed. Morse *v.* Godfrey, &c., 3 Story, 391. If there was, before that time, a right in Robert Hudgins to let the avails or annual income be expended at his discretion, without responsibility to any one, there could be no such right afterwards, (4 Johns., 588.) Under the voluntary system, the assignee derives as much right to rents and profits from the petition and decree, as he derives under the involuntary system from the act of bankruptcy and the decree.

3. Even if the decree of the Circuit Court were set aside, there should be a decree against Robert Hudgins for the purchase-money remaining unpaid at the time of the bankrupt's

petition, and the land held subject thereto, as well as to the liens of the judgment creditors of John L. Hudgins.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the eastern district of Virginia.

The bill was filed in the court below by the assignee in bankruptcy of John L. Hudgins, against Robert Hudgins and others, to set aside the conveyance of a large real estate charged to have been made by the bankrupt to the said Robert, in fraud of his creditors and of the bankrupt law of the 19th August, 1841. The deed of conveyance purports to have been executed on the 21st February, 1842, but was not recorded till the 8th August following; and conveyed, for the alleged consideration of $5,000, three tracts of land—one tract of one hundred acres, one of nine hundred, and another of seventy acres—being, in the aggregate, one thousand and seventy acres, situate in the county of Mathews, State of Virginia. The bankrupt's place of residence was upon one of the tracts. The deed of conveyance contained a clause that the lands should be subject to any judgments that then bound them by operation of law. John L. Hudgins, the grantor, was heavily in debt at the time of the execution of the deed, and judgments to a large amount were soon after recovered against him. Executions were issued upon these judgments, and the defendant endeavored, by various ways and contrivances, to conceal his person and property from the reach of them. This was in the spring and summer of 1842.

On the 17th February, 1843, John L. Hudgins presented his petition to the District Court for the benefit of the bankrupt act, annexing thereto a schedule of his debts and property—the debts exceeding $12,000; property none, except a contingent interest in a deed of trust by T. Hudgins, for the benefit of creditors. On the 20th May, 1843, the petitioner was declared a bankrupt, and on the 19th September following an order was made, providing for the creditors to show cause, on a given day, why the petitioner should not have granted to him a certificate of discharge from all his debts. The creditors appeared, and resisted the discharge. Much testimony was taken on their behalf, tending to establish the fraudulent transactions of the bankrupt with Robert Hudgins and others, which are now relied upon to set aside the deed in question. The opposition to granting the discharge resulted in the District Court adjourning several questions of law and fact to the Circuit Court, for its decision. What disposition was made of them in that court, we are not advised.

The defendant, Robert Hudgins, in order to prove the payment of the purchase-money of the lands conveyed in the deed of the 21st February, introduced two receipts from John L. Hudgins—one for $3,055, dated 6th August, 1844; the other, 12th August, same year, for $1,425—and proved the execution of the same by witnesses, who counted the money and saw it paid.

The several tracts of land conveyed were worth, as testified to by witnesses, over $10,000, double the amount of the purchase-money. The possession and occupation of the same, subsequent to the sale, seems not to have been changed. Indeed, John L. Hudgins, in his receipt of the payment of the $1,425, 12th August, 1844, describes the land as being the same as that upon which he resides, and has resided for years. He and his sons have cultivated and improved the arable land, cut and sold timber from the woodland, since the sale to the defendant, Robert, the same as before, the latter apparently exercising no control or acts of ownership over the property.

In the fore part of July, 1842, some four months after the alleged conveyance, John L. Hudgins made application to certain individuals to borrow a considerable sum of money, to relieve himself from judgments and executions then pressing upon him, and proposed giving a deed of these same lands, in trust to the lenders, as security for the loan. The writings were prepared with a view to carry into effect this arrangement, and the defendant was present, assenting to it, without disclosing that a conveyance had already been made to him.

A good deal of other evidence was given in the case, bearing more or less upon the question of fraud, which it is not material to recite, and which will be found in the record.

The court below, on the 18th May, 1848, decreed that the deed of John L. Hudgins, the bankrupt, to Robert, his brother, of the 21st February, was fraudulent and void as against creditors, and appointed the assignee in bankruptcy a receiver, to take possession of the property, and directed that a master should take an account of the rents and profits from the petition in bankruptcy to the time when the receiver took possession. The master subsequently reported the amount at the sum of $2,320.26, and on the 27th June, 1855, a final decree was entered. The cause is now before this court, on an appeal from this decree.

It was scarcely denied on the argument, and, indeed, could not be, that John L. Hudgins, the bankrupt, had been guilty of a fraudulent contrivance to hinder and defraud his creditors on the execution of the conveyance in question; but it has been strongly urged that Robert, the grantee, was not privy to

the fraud, and hence was a *bona fide* purchaser for a valuable consideration. We shall not, therefore, deem it material to refer to any portion of the mass of evidence in the case, except so far as it bears upon the connection of the grantee with this question of fraud.

The answer of the defendant to the bill is not very satisfactory. The bill charges that the deed, though it bears date 21st February, 1842, was really executed on or about the 2d of July following, the time it was put on record; and that it was antedated in pursuance of the fraudulent purpose charged against the parties. The answer does not notice or deny this allegation. Again, the bill charges that the deed was not delivered at the time it bears date; nor, in fact, delivered at all to the grantee in any other way than the putting of it on record by the grantor himself. This charge is not noticed or denied; neither is the allegation denied, that the grantee remained in the possession and enjoyment of the property after the conveyance, the same as before. And this averment, besides being thus virtually admitted, is fully established by the proofs in the case.

The consideration or purchase-money agreed to be given for the three tracts of land conveyed was less than one-half the value, as proved by uncontradicted testimony. The deed contained a clause, that the lands should be subject to any judgments that were then a lien upon them; and it was urged, on the argument, that these judgments should be taken into the account, on fixing the amount of the purchase-money. But the answer is, that it does not appear, from any evidence in the case, that judgments existed against John L. Hudgins at the date of the deed. We have examined the proofs attentively, and find none; nor have any been referred to in the briefs of the counsel. It also appears that Robert, the grantee, some four months after the date of his deed, and when the title to the lands in question was in him, if the conveyance had been really made at its date, was present, and participated in a negotiation for a loan of money to John L. Hudgins, and which was to be secured by a deed from him of these very lands, in trust, to the persons advancing the money.

The conduct of the defendant, Robert, in this instance, furnishes the foundation for a strong inference, either that the deed had not then been executed and delivered, or, if it had been, that the grantee held it for the use and benefit of John L. Hudgins, the grantor. In either view, the fact affords a well-founded suspicion of the *bona fides* of the transaction between the parties.

In respect to the payment of the purchase-money, of which

very formal proofs have been given of the principal part of it, the effect in support of the conveyance is very much impaired by the fact that John L. Hudgins, in the schedule of his estate annexed to this petition in bankruptcy, 23d February, 1843, takes no notice of this indebtedness to him, by Robert, the grantee, and the truth of the schedule is verified under oath. This was a year and two days after the date of the deed, and when the purchase-money was unpaid, if the facts are true, as insisted by both the parties subsequently, upon the question of payment. They now admit this did not take place till August, 1844. No attempt has been made to account for or reconcile this inconsistency, if not worse, on the part of John L. Hudgins. Without pursuing the examination of the proofs in the case further, we will simply say, that after the fullest consideration of the facts in the case, we are satisfied with the conclusion arrived at by the court below upon this question.

But it is insisted that, admitting the conveyance to be void as it respects the creditors of John L. Hudgins, the court below erred in ordering a sale of the property, without having first ascertained the debts of the bankrupt, and permitting the grantee in the deed to redeem on paying them, or directing only so much of the land to be sold as would be sufficient to pay the debts.

The answer to this is, that the defendant, Robert Hudgins, made no offer to pay the debts on ascertaining the amount, and, for aught that appears, the whole of the property will be no more than sufficient to pay the liabilities of the bankrupt. If there should, by chance, be any surplus, it belongs to the court in bankruptcy to dispose of it. Whether it should go to the bankrupt or to his grantee, will be for that court to determine.

It is also insisted, that the court below erred in decreeing the rents and profits of the lands in controversy against the defendant, Robert Hudgins, for the reasons that it is not shown that he was in the possession and enjoyment of the same; and, also, that the court erred in decreeing these rents and profits from the filing of the petition in bankruptcy, instead of from the decree declaring John L. Hudgins a bankrupt.

The short answer to each of these objections is, that no such exceptions were taken to the report of the master, and are therefore not properly before us. That was the time and place to have presented these questions, and the omission precludes any question here on the matter.

The decree of the court below affirmed.