# SCOTT v. ELLERY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF IOWA.

No. 117.  Submitted November 25, 1891. — Decided January 4, 1892.

Sections 5105 and 5106 of the Revised Statutes relate to different classes of
debts against a bankrupt; the former to debts that are proved, the latter
to debts that are provable but not proved.

A mortgage creditor of a bankrupt obtained a decree for the foreclosure
of the mortgage, under which the property was sold for less than the
mortgage debt. He proved the remainder, deducting the amount received
from the sale, in the bankruptcy proceedings. After the discharge of the
bankrupt he obtained a decree in the foreclosure proceedings against the
debtor for the balance due on the mortgage debt. *Held,* that by proving
his debt in bankruptcy he waived his right, pending the question of dis-
charge, to take a deficiency decree against the bankrupt; that after the
discharge the right to such a decree was lost altogether; that the debtor
was not bound, after his discharge, to give any attention to the foreclos-
ure suit; and that, under the circumstances, the obtaining a deficiency de-
cree amounted to a fraud in law.

THE case is stated in the opinion.

*Mr. H. Scott Howell* and *Mr. William C. Howell* for appel-
lant.

*Mr. E. S. Huston* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff, Ellery, and the defendant, Scott, were, on and
after the 17th day of August, 1877, residents and citizens, con-
tinuously, of the respective States of New Jersey and Iowa.

On that day, Scott instituted a suit in the District Court of
Des Moines County, Iowa, to obtain a decree for the sale of
certain lands in that county covered by a mortgage given by
Ellery, and for a judgment against the latter for the mortgage
debt. Ellery appeared in the suit and caused it to be removed

into the Circuit Court of the United States for what' was then the Southern District of Iowa. By a decree, rendered June 10, 1878, the mortgage was foreclosed, the court adjudging the sum of $19,480.50 and costs to be due Scott from Ellery, and directing a sale of the premises by the master to pay that sum. The decree concluded: " It is further ordered that the said master shall, as soon as the said sale is made, report the same to this court for its action thereon, and that this cause do stand continued until the execution of this decree, and the further order of this court." The mortgaged property was sold under the decree, and brought the sum of $10,000. The sale was duly confirmed November 4, 1878, that sum being credited on the decree.

Prior to the confirmation of the sale — whether before the sale occurred is not stated — a petition of involuntary bankruptcy was filed against Ellery in the District Court of the United States for the District of New Jersey, and he was duly adjudged by that court a bankrupt. His estate was conveyed by the register in bankruptcy, in the usual form, to an assignee. Subsequently, January 27, 1879, Scott filed with the register in bankruptcy proof of his debt against the estate of Ellery, based upon the above decree of foreclosure, and giving a credit for the $10,000 realized by the sale.

On the 25th day of February, 1879, Ellery was granted a discharge in bankruptcy, but no dividend was ever made or paid by his assignee.

At the regular term of the Circuit Court of the United States for the District of Iowa, held at Des Moines, May 15, 1879, Scott appeared by counsel, and such proceedings were had that a decree was rendered, at his instance, against Ellery for $10,436.42, being the balance due on the mortgage debt. No new notice was served upon Ellery or his counsel, by or for Scott, nor was any notice published, stating that an application would be made for a deficiency decree against Ellery.

Scott did not have knowledge of Ellery's discharge in bankruptcy until long after the date of the deficiency decree; and Ellery had no actual knowledge of that decree until about the last of May, 1883. The only notice either had was such as

might be implied or inferred from the facts and proceedings to which reference has been made.

By the final decree in the present suit, which was a bill in equity brought by Ellery, the court, in accordance with Ellery's prayer for relief, vacated the deficiency decree of May 15, 1879, and Scott was enjoined from enforcing it.

Section 5105 of the Revised Statutes provided (as did the bankruptcy act of 1841, c. 9, § 5, 5 Stat. 445) that "no creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action against him; and all proceedings already commenced or unsatisfied judgments already obtained thereon against the bankrupt shall be deemed to be discharged and surrendered thereby." This section was amended by the act of June 22, 1874, by adding thereto the following words: "But a creditor proving his debt or claim shall not be held to have waived his right of action or suit against the bankrupt where a discharge has been refused or the proceedings have been determined without a discharge."  18 Stat. 179, c. 390, § 7.

Section 5106 provided that "no creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined; and any such suit or proceeding shall, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of the discharge, provided there is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge, and provided, also, that if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed."

It is clear that sections 5105 and 5106 related to different classes of cases. Section 5106 applied only to creditors whose debts were "provable," but not proved, in bankruptcy. In respect to such debts, when sued for, the right was given to the bankrupt, upon his application, to have the suit and pro-

ceedings, in whatever court pending, stayed until the question of his discharge was settled, subject to the condition that there was no unreasonable delay in endeavoring to obtain the discharge, and to the further condition that the court in which the action was pending, with leave of the bankruptcy court, could proceed for the purpose simply of ascertaining the amount of the debt, so that it could be proved in bankruptcy. If the bankrupt failed, in a case of that kind, to make his application for a stay of proceedings, the jurisdiction to proceed to final judgment against him, whether the action was pending in a state or in a federal court, was not impaired by section 5106. *Eyster* v. *Gaff*, 91 U. S. 521; *Davis* v. *Friedlander*, 104 U. S. 570, 575; *Hill* v. *Harding*, 107 U. S. 631, 634; *Dimock* v. *Revere Copper Co.*, 117 U. S. 559, 564; *Boynton* v. *Ball*, 121 U. S. 457, 466; *In the matter of Schepeler & Co.*, 4 Ben. 68.

The present case falls distinctly under section 5105 as amended by the act of June 22, 1874. When Scott proved his debt in the bankruptcy court, he waived his right, pending the question of Ellery's discharge in the bankruptcy court, to take a deficiency decree against him in the court in Iowa; and the discharge having been granted, the right to such a decree was lost altogether. The statute is susceptible of no other construction. It is of no consequence that Scott was without knowledge at the time the deficiency decree was rendered that Ellery had been discharged. By proving his debt in the bankruptcy court he became a party to the proceedings in bankruptcy, and surrendered the right to proceed in the Iowa suit until the question of Ellery's discharge was determined, and he was bound to know, when he took the deficiency decree, whether or not the bankrupt had in fact been discharged. After proving his debt in the bankruptcy court, he could not proceed in the Iowa suit unless Ellery was refused a discharge, or unless the proceedings in bankruptcy were determined without a discharge. And such would have been, no doubt, the view of the learned judge who rendered the deficiency decree, if he had been informed at the time that Scott had, proved his debt or claim in the bank-

ruptcy court, and that a discharge had been granted to the bankrupt.

The appellant lays some stress upon the fact that when the decree of foreclosure and sale was entered the cause was continued until the execution of that decree, and until the further order of the court. If by this is meant that Ellery was to be deemed as in court when the deficiency decree was rendered, and made no objection thereto, it is sufficient to say that the statute protected him against any personal decree in the court of Iowa, after Scott proved his debt in the bankruptcy court, and pending the question of his discharge, and that, after he was discharged, the right of Scott to a deficiency decree against him was gone. He was not bound, after Scott proved his debt in bankruptcy, to give attention to the suit in Iowa, or to assume that any steps would be taken in the Iowa court that were inconsistent with the statute. If Scott intended, by what he did, to assert his right to a deficiency decree, whether Ellery was discharged or not in bankruptcy, he should have instituted a new suit, or given due personal notice of his purpose to apply for such a decree in the foreclosure suit; in either of which cases Ellery could have pleaded his discharge in bankruptcy. Neither of these courses was pursued, but a deficiency decree was obtained in violation of the statute, and without notice to Ellery. It was obtained under circumstances that amounted to a fraud in law, and the decree below, vacating it and enjoining the appellant from enforcing it, was clearly right.

*Decree affirmed.*