MASON v. NATIONAL HERKIMER COUNTY BANK OF LITTLE FALLS.

(District Court, N. D. New York.   September 14, 1908.)

BANKRUPTCY—VOIDABLE PREFERENCE—INDIRECT PAYMENT OF CREDITOR.

    · A bankrupt corporation made a note to another corporation which
    indorsed and discounted the same with defendant bank.   Within four
    months prior to the bankruptcy, and when both corporations were in-
    solvent and known to be so by defendant, the indorser paid the note
    which was not then due, and charged the amount to the bankrupt,
    which had goods or a credit for goods with the indorser of greater
    value than the amount of the note; the effect being to diminish the
    bankrupt's assets by that amount.   The bankrupt was a party to the
    arrangement; the officers of the two corporations being practically the
    same.   *Held*, that the effect of the transaction and its intended effect
    was a preferential payment by the bankrupt to defendant which was
    recoverable in equity by the trustee.

In Equity.   Suit in equity to set aside a transfer of property by
the bankrupt, the Newport Knitting Company, to the National Herki-
mer County Bank of Little Falls, N. Y., in payment of a certain note
before due and at ·a time when the said Newport Knitting Company
was insolvent and its insolvency was known to the bank, and to re-
cover this said property as an illegal preference.

Henry J. Cookinham, for complainant.

Myron G. Bronner and A. M. Mills, for defendant.

RAY, District Judge.   The Newport Knitting Company was in-
corporated about September 11, 1900, under the laws of the state of
New York, with a capital stock of $30,000 divided into ⁻300 shares,
with its principal place of business at Newport, Herkimer county, N.
Y., to carry on a knitting mill, woolen and cotton factory, and manu-
facture, buy and sell knit goods, cloth, yarns, wool, and cotton, etc.
Its incorporators and directors were Titus Sheard, Frank Senior,
H. P. Snyder, Orville P. Purdy, and Edwin I. Stimson, and 100
shares were issued to Purdy, 45 shares to Sheard, 45 shares to Senior,
45 shares to Snyder, 20 shares to Stimson, and 20 shares to Weyman
Walker.   One hundred and seventy-five shares were paid for on
machinery and supplies sold to it by the H. P. Snyder Manufactur-
ing Company, and it seems nothing was paid for the other
shares, although it was asserted there was a consideration.   There
was another corporation, known as the Titus Sheard Corpo-
ration, and it is said the Newport Company was a subsidiary of the
Sheard Company, as I shall designate the two.   One witness who
ought to know the facts so spoke of and designated it.   The directors
and officers of both corporations were substantially the same.   Titus
Sheard was the president and financial head of both.   Stimson was
his son-in-law and Senior his nephew.   Subsequent to July, 1901, the
books ·of account of the Newport Knitting Company were kept in the
office of the Titus Sheard Company at Little Falls, and in the same
room by the same person.   Titus Sheard was a director of the defend-
ant bank, and had been for many years prior to the transaction com-
plained of, and was a personal friend of its president, David Burrell,
and its cashier, Geo. D. Smith.   In the summer of 1903 the Sheard

Company was financially embarrassed, and Burrell, the president of the bank and one C. A. Miller, one of its directors, undertook to assist it in liquidating its affairs. Consultations were had, and these resulted in an agreement by which, August 8, 1903, that company, in effect, transferred all its property and effects to the bank

There was a series of notes, among which was one of $5,773.05 discounted January 8, 1901, at defendant bank, made by the Newport Knitting Company, indorsed by the Titus Sheard Company, and discounted by said Sheard Company for its own benefit. Partial payments were made, and renewals had until May 11, 1903, when it was renewed for four months, and on August 22, 1903, and before it was due, it was renewed for three months. This is the note in question here the payment of which is alleged to have been made, in fact, by the Newport Knitting Company on the 26th day of September, 1903, before due and as a preference. The amount of the note was then $4,953.33, less the accrued interest. It was paid by the check of the Titus Sheard Company from funds in the bank to its credit, but such payment, or the amount of the note, was at once charged to the account of the Newport Knitting Company, which then had goods or credit for goods with the Titus Sheard Company in excess of the amount of the note. The effect of this transaction was to lessen the assets of the Newport Knitting Company by the amount of the note $4,953.33 in payment of its own note, and transfer that amount of its assets to the Titus Sheard Company in payment to it of the $4,953.33 which it paid the bank, and to the bank which by virtue of the transfer before mentioned had become or became possessed of all the assets and property of the Titus Sheard Company. The Newport Knitting Company and its creditors did not get the said $4,953.33. The defendant bank got the whole of it. Such was the well-known legal and intended effect. Both the Titus Sheard Company and the Newport Knitting Company were then insolvent, and this fact was well known to the bank and its officers. The operations of the Knitting Company were then practically suspended, and were never resumed, and the Titus Sheard Company was being practically wound up by the bank which knew the relations of the two companies. About the middle of October, 1903, proceedings for the voluntary dissolution of the bankrupt, Newport Knitting Company, were instituted. December 30, 1903, a petition in bankruptcy was filed against the Newport Knitting Company, and an adjudication was had January 23, 1904. There can be no doubt that the Newport Knitting Company knew of, assented to and took part in the payment of the note in the manner aforesaid. There can be no question that it and the Titus Sheard Company, knowing their financial condition and insolvency, intended a preference to the bank, and that the bank was seeking and intended to obtain and receive a preference over the other creditors of the Newport Knitting Company.

The position of the defendant bank is that the Titus Sheard Company, liable on this note to the bank as indorser, had the right under its agreement, referred to, to pay it and paid it from its own prop-

erty; that the Newport Knitting Company, as maker, was liable to it, and it had the right to make the set-off and charge the amount to the maker; that the bank received nothing from the Newport Knitting Company, and is not liable to its trustee; that even if the Titus Sheard Company, being insolvent, made a preferential payment to the bank, this action does not concern that, and even if the Newport Knitting Company made a preferential payment to the Titus Sheard Company, the action must be against it, and cannot be maintained against the bank. The Titus Sheard Company disappeared. But, as I look at this case, under the evidence the payment was, in fact, made by the Newport Knitting Company. It knew of it and intended it in the mode described. Its property, in legal effect, was used to make the payment. The effect in equity is not changed for the reason it was done in the manner described. If the Titus Sheard Company had given its check to the Newport Knitting Company— that is, if Sheard, president, and the treasurer had given a check signed by themselves as such, representing the Sheard Company, to themselves as representing the Newport Knitting Company in payment on account and the Knitting Company had turned that over to the bank —no question could be raised. A short cut was taken by common consent, and the check was passed to the bank and the amount charged to the Knitting Company so that it in fact paid the note. The Circuit Court of Appeals may hold that such a transaction legally evades the provisions of the bankruptcy act, but I cannot. It was a preference pure and simple intended as such by all the parties to the transaction.

It was voidable, not void. This action is to declare it void, and I so hold. The transaction is declared void, and the trustee is entitled to recover the amount paid on the note.