## MORRIS v. NEUMANN.

### In re STEWART.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1923.)

No. 6374.

1. **Bankruptcy ☞162—Judgment, otherwise valid, may include voidable preference.**

　　While a judgment enforcing a valid lien, though rendered within four months prior to bankruptcy of defendant, and when he is insolvent, does not constitute a "voidable" preference, under Bankruptcy Act, § 60b (Comp. St. § 9644), if it is collusive, and includes a substantial amount not secured by the lien, it is to that extent within the statute, and the excess may be recovered by the trustee.

　　[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voidable.]

　　**Bankruptcy ☞293(2)—Jurisdiction of bankruptcy court of suit to recover preference.**

　　Where a preferential judgment is that of a state court of competent jurisdiction, in the absence of fraud, it can only be attacked in that court; but, where it was procured through fraud of the plaintiff and collusion of bankrupt, it may be attacked by appropriate proceedings in any court, including the bankruptcy court, under the jurisdiction conferred by Bankruptcy Act, § 60b, as amended (Comp. St. § 9644).

3. **Bankruptcy ☞287(1)—Procedure in suit to recover preference governed by laws and rules of court in which it is brought.**

　　A suit to set aside an illegal preference is governed as to pleading and practice by the laws and rules of the court in which it is instituted, and if brought in the bankruptcy court the distinction between law and equity jurisdiction, maintained in all the federal courts, must be preserved.

4. **Bankuptcy ☞287(3)—When suit to recover preference lies at law, and when in equity, stated.**

　　In a suit in a court of bankruptcy to recover an illegal preference, if the only relief asked is recovery of a money payment, the remedy is at law; but, if it is sought to set aside a conveyance, the court has jurisdiction only in equity.

5. **Bankruptcy ☞287(3)—Bankruptcy court held without jurisdiction at law of suit to recover preference.**

　　In a suit by a trustee in the court of bankruptcy to set aside the judgment of a state court of competent jurisdiction foreclosing a lien on property of bankrupt, on the ground that, through fraud and collusion between the parties, it included a considerable amount not secured by the lien, where the relief asked was the setting aside of the judgment in its entirety and restoration of the property to the bankrupt estate, the jurisdiction is in equity, and relief cannot be granted in an action at law.

　　Lewis, Circuit Judge, dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action at law by H. Neumann, trustee in bankruptcy of Louis Stewart, bankrupt, against W. H. Morris. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

John F. Simms, of Albuquerque, N. M. (H. C. Denny, of Gallup, N. M., on the brief), for plaintiff in error.

J. W. Chapman, of Gallup, N. M., for defendant in error.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

VAN VALKENBURGH, District Judge. Plaintiff in error was the owner of certain notes, and a chattel mortgage securing the same, executed by Louis Stewart and wife, of Gallup, N. M., on the 10th day of December, 1918. Default having been made, plaintiff in error, on the 23d day of March, 1921, filed suit in a district court of the state of New Mexico, for the proper county, for the foreclosure of said chattel mortgage, and for the establishment of a landlord's lien against the mortgagees. A receiver pendente lite was prayed and was appointed. The defendant Stewart waived the issuance of service and process, filed answer confessing the allegations of the complaint, and thereafter, on the same day, to wit, March 23, 1921, the state court entered judgment in the sum of $43,765.91, and for foreclosure of the mortgage and lien. Said judgment was made up of the following items: $31,000 upon the principal of the notes; $6,001.47 interest thereon; rentals in the sum of $1,458.33; insurance premiums in the sum of $897.11; attorney's fees, $4,399; and court costs in the sum of $10—all in accordance with the report of the receiver, to whom said items had been referred for audit and report. Upon sale under the judgment, plaintiff in error became the purchaser for a sum equaling the amount of the judgment and the expenses of the receivership.

April 5, 1921, a petition in involuntary bankruptcy was filed against said Stewart in the district of New Mexico. May 4, 1921, the adjudication was made, and thereafter defendant in error was elected trustee and duly qualified as such. September 13, 1922, the trustee brought this action at law, setting up substantially the facts above stated, and charging that the property thus coming into the hands of plaintiff in error was reasonably worth the market value of $75,000; that the bankrupt was insolvent, as evidenced by the fact that his indebtedness greatly exceeded all his property of any nature, including that passing under foreclosure; that included in the judgment of the state court, on account of interest, attorney's fees, and rental, was an aggregate amount of $5,229.49 in excess of the actual amount owed; that this was known, both to the bankrupt and to plaintiff in error; that plaintiff in error, by his agents and attorneys, falsely and fraudulently represented to the court that this amount was due, and thereby committed a fraud upon the court, and induced the court to render judgment for the excessive amount; that the said bankrupt, by consenting to the judgment, knowingly aided the plaintiff in error to procure this excessive judgment; that plaintiff in error was at the time also a creditor,

of the class of unsecured creditors of the said bankrupt, with unsecured claims aggregating over $26,000; that the effect of this excessive judgment would be to grant a preference to plaintiff in error over other creditors similarly situated; that this was known and intended by the bankrupt and by plaintiff in error, with full knowledge of the insolvency. He prayed judgment for the full sum of $75,000, alleged to be the reasonable market value of the property sold under foreclosure sale, together with interest and costs of suit.

After the issues were framed, by answer, following demurrer and motion to dismiss for want of jurisdiction, plaintiff in error on its part moved the court for judgment on the pleadings, on the ground that defendant in error had failed to deny, by his answer or otherwise, any of the allegations of the complaint. This motion was by the trial court sustained, and judgment was rendered for the sum of $5,229.49, the amount of excess in the judgment of the state court alleged in the complaint of defendant in error.

[1] There being no diversity of citizenship, the right of the trustee to sue in the District Court of the United States must be founded upon the jurisdiction conferred by the Bankruptcy Act, to wit, sections 60b and 67e as amended (Comp. St. §§ 9644, 9651). These sections have to do primarily with transfers made and judgments rendered within the four months period upon claims which have no preferential standing. Counsel for plaintiff in error calls attention to the fact that a clear distinction exists between such and judgments which arise out of the enforcement of a valid and subsisting lien, which has priority over the claims of general creditors, and against which the trustee cannot assert a paramount right. If no vice inheres in the claim of the lienor, which impairs the validity of his lien, he would have a right to prosecute that lien to judgment and to secure the full fruits of his priority. The mortgage lien is not attacked in this action; but it is asserted that included within the judgment is a substantial amount in excess of the legitimate lien claim, that this excess amount was not covered nor protected by the mortgage, that this was known both to the bankrupt and to plaintiff in error, and that the ultimate effect is to give to plaintiff in error a preference over other general creditors upon his unsecured claim filed with the referee, and amounting approximately to $26,000; that such was the intention both of the bankrupt and of plaintiff in error.

The known insolvency of the bankrupt at the time is admitted. The first question, then, is whether an amount thus recovered by legal proceedings within the four months period, and forming part of a judgment in other respects responding to the lien claim, is a preference within the meaning of the sections of the Bankruptcy Act to which reference has been made? In our opinion, it is. While it arises in an unusual manner, nevertheless the language of the statute is broad enough to include any money or property received or recovered during the statutory period, which is not covered and protected by some prior lien, and which may not prevail otherwise against the right of the trustee to the estate of the bankrupt. That the preference arises in this indirect way in no wise alters its standing under the law, nor the gen-

eral right of the trustee to reclaim it. Otherwise an avenue of fraud, broad and easy of access, would be open to designing bankrupts, acting in collusion with equally designing creditors. Let us suppose that a mortgage debt had been paid in full, but not released from record, and that within the statutory period by connivance the mortgagee should institute foreclosure proceedings for the full amount specified in the mortgage, that the bankrupt should appear and confess the claim, and that, no reason to the contrary appearing, judgment should be entered accordingly. It cannot be supposed that the trustee would be left without remedy to recover a substantial part of the estate thus fraudulently withdrawn by such apparently regular proceedings. Where, as here, the alleged fraud is not so far-reaching, nevertheless the remedy of the trustee would be equally available.

It is, however, necessary to plead a state of facts which presents such a situation. This the trustee has done in the instant case, by charging that the acts complained of were done with knowledge and in collusion between the bankrupt and the mortgagee. He points out the items and the amounts of the excess recovery. He states that the purpose was to give a preference, and that such a preference would accrue to the plaintiff in error; that the total claims against the estate are largely in excess of the assets, even if the property passing by sale under the judgment be included in those assets. It would seem, then, that a case is made under the act, provided the trustee is in position to assert it and does so in the proper forum and by proper pleadings. So much, then, for the abstract right conferred by the act of bankruptcy.

[2] We are next met by the question whether this remedy can be prosecuted in the federal court, and, if so, whether in equity or at law? It would seem that the District Court has jurisdiction, because, if it is a preference, the right of the trustee to sue in that court is expressly conferred by the act. In this case, however, the preference claimed is embodied in a judgment, regular on its face, procured in a state court of competent jurisdiction—a jurisdiction which embraces the parties and the subject-matter, and includes the right to decide and determine the issues upon competent evidence produced. Such a judgment must stand in its entirety, unless set aside or modified by appropriate proceedings in the same court, or in some other court having jurisdiction to assail it at the instance of proper parties and under sufficient allegations.

The trustee has undertaken to meet this situation by charging that the action of the state court was brought about by the false and fraudulent representations of the plaintiff in error, through his attorneys and agents, with the connivance and aid of the bankrupt, whereby that court was induced, by fraud and imposition, to render a judgment which otherwise it would not have entered, and which is in direct conflict with the rights of the trustee under the paramount act of bankruptcy. Such action by the parties, if established, is such extrinsic fraud as would warrant setting aside or modifying the judgment, either in the court in which it was rendered or in some other court of competent jurisdiction, such as this court of bankruptcy, under the powers conferred by the act.

293 F.—62

It is here interposed by counsel for plaintiff in error that a federal court would have no such jurisdiction in an independent action between these parties, no diversity of citizenship existing; but to this the answer is that that court acquired its jurisdiction to recover a preference under the express terms of the Bankruptcy Act (Comp. St. §§ 9585–9656), and that the setting aside or modifying of this judgment, because of the alleged fraud, is a mere incident to and a preliminary step in the exercise of this undoubted jurisdiction, just as the setting aside of any instrument or transfer forming the basis of the preference would be; therefore the District Court has such jurisdiction, provided it is appropriately invoked. It is contended, however, that such a proceeding can be entertained, if at all, only in equity, which alone has power to grant the full relief prayed, and the trustee has brought this action at law, as for money or property had and received, the status of which is not so conditioned.

[3] Under the Constitution of the United States and the acts of Congress, the distinction between law and equity is recognized, and that distinction is scrupulously preserved in federal courts. A proceeding to set aside an illegal preference must be governed as to pleading and practice by the laws and rules of the court wherein it is instituted. If instituted in a federal court, it has frequently been held that such a proceeding is governed by the federal equity practice; that such suits are analogous to judgment creditors' suits to set aside fraudulent conveyances, and are therefore properly within the equity jurisdiction of the court. Under both prior and present acts trustees have uniformly had resort to federal courts of equity to set aside fraudulent conveyances or illegal preferences. Westall et al. v. Avery, 171 Fed. 626, 96 C. C. A. 428; Pond v. New York Nat. Bank (D. C.) 124 Fed. 992; Wall v. Cox, 101 Fed. 403, 41 C. C. A. 408; Off v. Hakes, 142 Fed. 364, 73 C. C. A. 464; Parker v. Black (D. C.) 143 Fed. 560; same case, 151 Fed. 18, 80 C. C. A. 484; Mason v. Nat. Herkimer Co. Bank (D. C.) 163 Fed. 920; Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Rogers v. Palmer, 102 U. S. 263, 26 L. Ed. 164; Auffmordt v. Rasin, 102 U. S. 620, 26 L. Ed. 262; Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478; Hudgins et al. v. Kemp, 20 How. 45, 15 L. Ed. 853; Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640; Scott v. Ellery, 142 U. S. 381, 12 Sup. Ct. 233, 35 L. Ed. 1050.

[4] It has been held in a number of cases, and by this court among others, that where, in a suit to recover an alleged preference, the only relief demanded is the recovery of money claimed to have been paid to defendant by the bankrupt under circumstances alleged to constitute a voidable preference, there is a plain, adequate, and complete remedy at law, and hence a bill in equity is not maintainable. First State Bank v. Spencer, 219 Fed. 504, 135 C. C. A. 253; Warmath v. O'Daniel et al., 159 Fed. 87, 86 C. C. A. 277, 16 L. R. A. (N. S.) 414; Grant v. Nat'l Bank of Auburn (D. C.) 197 Fed. 581; Simpson v. Western Hardware & Metal Co. (D. C.) 227 Fed. 304. No case so holding, so far as we are advised, involved in its facts a judgment upon foreclosure of a subsisting prior lien. Of the four cases last above named, and

cited in the briefs, two involve money payments, one a transfer of household furniture, and the fourth a judgment upon unsecured notes. all within the four months period. In Warmath v. O'Daniel, the court recognizes that the doctrine announced by it does not apply in cases—

"where a declaration of the court may be necessary to completely fulfill all requirements. as where the transfer has been accomplished by a deed or other solemn instrument which may be made matter of record, or in a muniment of title the existence of which would indicate ownership and the right to sell and convey or mortgage, or do such other things with it as belong to ownership."

In First State Bank v. Spencer, the action was to recover the sum of $1,100 in money claimed to have been paid to the creditor by the bankrupt under such circumstances as to constitute a voidable preference. Judge Carland was careful to say that:

"The case had not a single element of equitable jurisdiction, unless all actions to recover a voidable preference are necessarily equitable actions. * * * The truth is that it is simply a suit or proceeding arising out of bankruptcy, and whether it shall be prosecuted in equity or at law depends upon the nature of the case and the relief demanded."

He then quotes with approval the language of the court in Warmath v. O'Daniel, to which attention has just been called.

[5] The apparent conflict in the decisions is not a substantial one. There had been a tendency on the part of courts generally to accept the view that all actions to recover voidable preferences were necessarily equitable actions. The distinction between law and equity was not thereby preserved, as Judge Carland aptly pointed out; but it by no means follows that recoveries at law are to be substituted for recoveries in equity, where essential elements of equity jurisdiction are present. To "preserve" the distinction between law and equity is not to abolish that distinction. We may freely concede that, for the mere recovery of money paid and property transferred within the four months period, the remedy at law is adequate. It may be that a transfer through a judgment procured or suffered upon an unsecured claim may be similarly reclaimed; but there is a vast difference between such a judgment and one rendered by a court of competent jurisdiction in the foreclosure of a prior lien to which the act of bankruptcy interposes no bar. The charge is that that court erred in the amount it found to be due from defendant to plaintiff; that this was brought about by the fraud of the parties, and by imposition practiced upon the court. Defendant in error seeks to recover, not merely the excess of recovery, but the entire value of the property passing under the judgment. The lien of the mortgage is recognized, but the foreclosure is, in effect, to be set aside; the property, or rather its value, is to be brought back into the bankrupt estate, and the lien of plaintiff in error, if recognized, as it is, must be relitigated and re-established in the bankruptcy court. Such was not the judgment pronounced by the trial court, but such was the relief asked in the complaint, and the relief for which counsel for defendant in error still contends.

It is difficult to conceive of a situation, which would appeal more strongly to the exclusive jurisdiction of a court of equity for full and adequate determination. The judgment of the state court was not one

rendered without authority under the provisions of the Bankruptcy Act, in a suit brought within four months before the filing of the petition in bankruptcy, and founded upon a claim unsupported by prior lien. It resulted from the foreclosure of liens acquired long prior to the bankruptcy, whose validity could not be affected by any provision of the act of bankruptcy here applicable. The judgment is assailed because a part of it is alleged to be tainted by fraud and collusion, resulting in imposition upon the trial court in the determination of a matter within its jurisdiction to hear and decide upon the issues framed. Defendant in error's right of action is based upon this contention. Relief of this nature cannot be accorded by submission to a jury in an action at law. As an essential preliminary to recovery, the judgment of the state court must, in substance, be reopened for vacation or modification. The administration of estates in bankruptcy, as outlined in the act, manifests no purpose of departure from the distinction established between proceedings in equity and at law. Nothing can be more essential to the preservation of stability in our jurisprudence than a proper regard for the integrity of the decisions of the courts upon matters clearly within their jurisdiction, and particularly between federal and state tribunals.

In Foltz v. St. Louis & S. F. Ry. Co., 60 Fed. 316, 8 C. C. A. 635, Judge Sanborn, speaking for this court, said:

"Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud. * * * Wherever the right and the duty of the court to exercise its jurisdiction depends upon the decision of a question it is invested with power to hear and determine, there its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud."

And, again, in Board of Commissioners v. Platt, 79 Fed. 567, 25 C. C. A. 87, the same learned judge says:

"A direct suit may undoubtedly be maintained in a proper case, to set aside a judgment for fraud in procuring it. Gaines v. Fuentes, 92 U. S. 10, 21; U. S. v. Norsch, 42 Fed. 417; 1 Black, Judgm. § 321, and cases cited. But until such a suit is brought, and until such a decree of avoidance is rendered, the judgment of a state court which had jurisdiction of the subject-matter and of the parties is conclusive upon the merits of the controversies determined by that judgment between the parties and their privies in every court of the United States."

Such a direct suit, involving such impeachment of this judgment, may undoubtedly be brought by the trustee in bankruptcy, but the jurisdiction is necessarily in equity.

It is claimed, however, that the plaintiff in error, by his pleadings or otherwise, has not preserved his right to be heard in this regard; that by his appearance and answer in the court below he practically

consented to the jurisdiction at law; that he failed seasonably to challenge the jurisdiction in this particular; and that inasmuch as, upon the face of the complaint, the amount of the preference was disclosed, the trial court, in the absence of specific denial, had jurisdiction to render judgment as it did. In our opinion, the record discloses sufficient action on the part of plaintiff in error to preserve his objection and exception to the jurisdiction that was exercised by the lower court. In several paragraphs of his answer he objects to that jurisdiction, not upon this specific ground, it is true, but nevertheless the jurisdiction is distinctly challenged. He next sets up the defense of res adjudicata, pointing out that the claim here sought to be recovered is embodied in the judgment of a state court of competent jurisdiction, that said final judgment of the state court has never been modified, vacated, set aside, appealed from, or otherwise challenged by any person whomsoever, including the trustee, and still remains in full force and effect. This very substantially challenges the right of the District Court, in an action at law, to impair the force and effect of a subsisting judgment in a state jurisdiction, without first attempting to modify, vacate, or set that judgment aside. Previously, in demurrer overruled, this ground appears:

"That it does not appear from the face of the complaint that this court has jurisdiction of this cause."

This is a general objection to the jurisdiction of the court as it was assuming to act. Finally, the defendant moved for judgment on the pleadings—among other things:

"Because the complainant seeks to attack in this suit at law the judgment of the state court duly rendered with jurisdiction of both the parties and subject-matter of that action."

It follows from what has been said that the judgment must be reversed, and the cause remanded, because, while a potential cause of action has been stated, the jurisdiction of the court below at law failed, and the judgment rendered cannot be sustained. Upon the equity side in the District Court such proceedings may be had, and such decree rendered, as the rules and practice in equity may permit.

LEWIS, Circuit Judge (dissenting). I accept, of course, the principles of law so well stated in the opinion of my associates, but believe none of them would be violated, because of the procedure adopted below, by an affirmance. That is, I think there is no room here for the application of those principles. A preference obtained under a judgment may be recovered by the trustee without first having the judgment vacated. Section 60b of the Bankruptcy Act deals only with the use to be made of a judgment and the effects that may result therefrom. A preference is recoverable notwithstanding the judgment. That seems to be conceded.

The chattel mortgage held by Morris, covering the stock of drugs, antedated the reach of the Bankruptcy Act, but the foreclosure decree and sale were within four months of bankruptcy. Morris bought at the foreclosure sale on his bid of $45,130, which equalled the sum found in the decree and costs; and the sale was confirmed to him. Neumann brought this action under sections 23b and 60b (Comp. St. §§ 9607,

9644) to recover from Morris the value of the whole stock, alleged to be $75,000, as a voidable preference received by Morris within the four months; but his complaint disclosed that all of the indebtedness found in the decree, except $5,229, was actually secured by the chattel mortgage. As to the amount so secured there can be no doubt that Morris was entitled to foreclose, and if the decree had not included the excess amount named his purchase and title would have been invulnerable to the attack now made by the trustee. The complaint alleges that the foreclosure sale was at public auction after it had been advertised for 34 days. There is no allegation that the sale was conducted improperly or unfairly in any respect. The answer of Morris did not deny that he knew, when the decree was entered, that the amount found to be secured by the mortgage was excessive to the extent of $5,229. In his answer he was content to rest his defense on a plea to the jurisdiction and that the decree of the State court operated as an estoppel. He made no denial of any of the facts stated in the complaint. His answer thus raised only issues of law. In this state of the case both sides, on April 10th, moved for judgment on the pleadings, and on April 18th the court overruled the defendant's motion, sustained plaintiff's motion and entered judgment for the $5,229, in favor of plaintiff and against Morris. That is the judgment brought here by Morris, and the question presented is, whether it is sustainable on the face of the pleadings. I think it is. The case having been submitted on motions for judgment on the pleadings there was no proof offered as to the value of the stock of goods, but it appeared from the pleadings that Morris bought the stock for $45,130 and the sale was confirmed. There is a basis for the conclusion that Morris' bid approximated the value of the stock. What the stock sold for in open market is evidence of its reasonable worth. Morris then got a proportionate part of the bankrupt's goods for the $5,229 excess in his decree, of that approximate value, and to that extent he depleted the bankrupt estate and obtained under his decree a voidable preference. That seems to be a reasonable conclusion from the facts set up in the complaint and not denied, and was the one adopted by the district judge. Morris can hardly complain that the court took his bid as the measure of value rather than the higher amount alleged. His other assignments of error deal only with the question of jurisdiction and his claim that the decree of the State court was res adjudicata, which are both clearly without merit.